BINIORES *v.* WALTHOUR-FLAKE COMPANY, INC.

4-8644                                                    209 S. W. 2d 93

Opinion delivered March 8, 1948.

Rehearing denied March 29, 1948.

*Carmichael & Hendricks,* for appellant.

*Brooks Bradley* and *Gerland P. Patten,* for appellee.

GRIFFIN SMITH, Chief Justice.    Six vacant lots in Block Four, Hollenburg Addition to Little Rock, owned by Frank Biniores and his wife, were listed with Walthour-Flake Company, Inc., under a contract dated September 21, 1945.    On its face the printed form provided for a commission of $50 for the sale of any lot if the amount should be less than $1,000.    The words "Gross Price" were permissively altered by pen, with the result that there was authority to sell the property at "a net price [of] $1,150".    On the reverse side the writing was, "Owner wants $1,150 net, purchaser to pay for abstracts—owner will pay taxes due".

Some time in January 1946 the Agency informed Biniores a purchaser had been found.    Biniores was sup-

plied with a deed appropriate to the transaction, which he and Mrs. Biniores executed on the 25th. With its delivery Walthour-Flake gave Biniores the Company's check for $932.21; also a typewritten statement showing, (a) "Cash received, $1,150; (b) disbursements, [itemized] $217.79; (c) balance, $932.21".

It developed that in preparing this statement for Walthour-Flake, J. W. Purdom, an employe, overlooked tax items amounting to several hundred dollars. The discrepancies were called to the Agency's attention by the grantees, C. E. and Vera M. Hutchinson, who relied on the grantors' warranty. Thereupon Purdom conferred with Biniores respecting payment of the obligations. Testimony relating to what was said at this meeting is in sharp conflict. Biniores insists he did not know the property had sold for $1,500, or at least this information was withheld until the deed was prepared; and then, before delivering the instrument, he asked Purdom whether "everything was cleared" by the deduction of $217.79. He was affirmatively assured, and relied upon Purdom's statement that $932.21 was net, and that the difference between $1,500 and $932.21 accounted for taxes, abstract fee, commission, etc.

Biniores asserts that when confronted with the additional demands he said to Purdom: "I don't know anything about it. I settled with you according to your check and asked you if that included everything". The witness then added, "I offered to give him his money back, but he wouldn't take it".

Effect of Purdom's testimony is that when the property was listed at $1,150 net, Biniores spoke of delinquent taxes and said that when they were paid he probably would have not more than four hundred dollars left. This was emphatically denied.

Purdom testified that in consequence of discussions regarding omitted taxes Biniores suggested preparation of a new statement, showing that $1,500 was received. Accompanying this proposal assurance was given that in return for the Agency's act in reducing commissions to $150, "all the items would be paid". Purdom is alleged

to have told Biniores that he did not have authority to make this arrangement, but that it would be referred to Walthour-Flake for ratification or rejection.

Soon after this conversation took place the Agency paid some of the taxes. Later (inferentially) Purdom told Biniores that J. D. Walthour had approved 'the tentative settlement. When Biniores declined to reimburse the Agency, suit was brought on the theory that because necessity. required payment by Hutchinson, Walthour-Flake is subrogated to the primary debtor's rights. From a decree in favor of the plaintiff and judgment for $490.83, Biniores and his wife have appealed.

Appellants contend, (a) that in listing the property at a *net* figure it was understood that this amount was to be realized by the owners, and the agreement to pay taxes meant State and County assessments as distinguished from improvement districts where betterments accrue; (b) in accepting the check for $932.21 based on a sale for $1,150 and in not holding out for $1,500, a reluctant compromise was made because of threats implying legal action. The deed was delivered because of the assurance that the settlement was final; (c) in making direct payment of taxes additionally claimed without presenting accurate statements to appellants, Walthour-Flake became a volunteer, and the right of subrogation does not exist.

The statement submitted to Biniores January 25th showing that but $1,150 was received listed disbursements as follows: Recording State deed, $1.75; revenue stamps on deed, $1.65; Broadway Bridge and Little Rock-Spring Lake Highway taxes 1933 to 1939, $10.36; Districts 113, 472, and 473 1945 taxes, $204.03. These were the items composing the difference between $1,150 and $932.21.

The subsequent statement, dated "as of" January 25—but admittedly prepared at a substantially later date—contains the following: Abstract fee, $50.50; State of Arkansas, $1.75; revenue stamps on deed, $1.65; sewer [district] No. 113, taxes for 1936 to 1940, $242.19; same district, taxes 1941 to 1945, $236.39; same district, taxes

for 1946, and Districts No. 472 and 473 for 1945, $204.03; Bridge and Spring Lake Highway tax 1932 to 1940 inclusive, $10.36; State and County taxes for 1945, $12.25; sales commission, $150. Total expense, $909.12. Difference between sales price of $1,500 and allowable deductions, $590.88. Refund due, ($590.88 from $932.21) $341.33.

In the complaint filed during March 1946 it was alleged that Biniores and his wife "had agreed" to accept $1,500 for the property and to pay an agent's commission of ten percent; also that the defendants had "agreed" to pay general and special improvement district taxes, "and other items chargeable to the sellers". Paragraph four of the complaint then asserts that "From said sum of $1,500 there was deductible the following items, . . . or a total of $909.12, leaving a balance due the said Frank and Dora Biniores of $590.88."

The items listed, for some reason not apparent, do not total $909.12, but only $430.54. In paragraph six there is the allegation that the plaintiff, upon request of the *then owner* of the lots, issued three checks, each dated February 18, 1946; one for $242.19, another for $236.39, and the third for $12.25. These items amount to $490.83 —the sum for which judgment was rendered. But the complaint asked $341.43, or $149.40 less than the amount recovered. The complaint was amended May 5th by adding, immediately preceding a prayer for relief, the matter shown in the footnote.[1]

When checks presumptively given for tax items were offered in evidence, they were objected to on the ground that the receipts would be the best evidence. The Court permitted the checks to be filed as exhibits to testimony that payments had been made, but ruled that if the receipts were insisted upon, they should be produced.

---

[1] Matter contained in the amendment: "That after the sale of the property and demand had been made upon the plaintiff by the purchaser . . . to pay taxes, . . . the plaintiff offered with the defendants by way of compromise a settlement of the transaction on the basis of the figures and computations contained in the statement [showing that the sale was made for $1,500]; that a settlement was refused by the defendants and the offered compromise was rejected. The amount of taxes paid by the plaintiff at the request of the purchasers . . . amounted to $490.86, [?] and this is the sum now owing. . ."

Thereupon appellant's attorney moved to strike from the record all of the checks except one for $12.25.

In procuring factual information essential to an accurate statement of the case, testimony and exhibits as abstracted have been checked. This has been supplemented by comparison with the record. Some of the payments claimed to have been made are not substantiated by original receipts or official copies.

If the abstracted statements are disregarded and the record proper is dealt with, it is disclosed that Sewer District No. 113 was paid $242.19 for "years 1936 to 1940, inclusive". For 1941 through 1945, the payment made February 20, 1946, was $236.06. There is testimony, but no receipt in support, that for 1946 the payment was $41.49. An undated card bearing the printed name of Roy Beard, City Collector, is notice that taxes on the lots "lying in Street-Sewer Districts Nos. 472 and 473 are due". A penciled notation reads, "1946 taxes paid". The payor is not identified. Amounts in each are $81.27, or $162.54 for the two districts.

In appellee's first settlement with Biniores, Sewer District No. 113, and "472-473 taxes" for 1945, were charged as $204.03. In the second statement the same item appears, but District No. 113 taxes are said to have been for 1946. Purdom testified that Districts 472-473 were each paid $81.27 for 1945, and that District 113 was paid $41.49 for 1946, and this, added to $162.45, would account for the charge of $204.03 appearing in each of the statements.

It would seem, therefore, that payments aggregating $519.74 were made to District No. 113 for 1936 to and including 1946; and, *prima facie,* Districts 472 and 473 were paid $162.54 for 1945.

Among the checks tendered by appellee was one for $242.19. This item was listed in the second statement and is shown to have been paid to the receiver of District No. 113.

In the second statement $12.25 is charged for 1945 State and County taxes. Purdom testified that 1945

taxes were $12.25. Receipts by Collector Gus Caple show that Lots 1 and 2 were assessed together on a valuation of $90 and that taxes were $8.82. Lots 3, 4, 5, and 6 were assessed on a valuation of $160, with taxes of $15.68. The two items total $24.50. There is probably some explanation, but it is not clearly indicated.

We are unable to even measurably harmonize statements of appellee's witnesses with the amount sought as a recovery in the original and amended complaints, and with receipts. Appellant had a right to insist upon primary evidence of payments and did not waive his objection to introduction of the checks. This right was recognized by the Chancellor, who indicated that the receipts should be filed. Some, purporting to be originals, are not identified as such. If the judgment should stand, appellant would have received $441.38 from a $1,500 sale, or $149.50 less than that claimed before the amendment was filed.

It would seem that at some time between January 25th and March 12th those who allege they made payments would have been able to determine the extent of expenditures, and to have presented appellant with primary evidence.

The procedure adopted in dealing with appellant is detailed for the purpose of showing how the payments are alleged to have been made, the attending circumstances, and the equitable theory of subrogation upon which the claim rests. Since this Court is unable, from the evidence or exhibits, to determine what appellants would owe according to appellee's various demands, it follows that necessary information was withheld. It was not given for one of two reasons: either appellee did not know, or it elected to negotiate with Biniores for settlement yielding a commission greater than ten percent of $1,500. The contract, if construed as listing the lots separately, (and if the sale of each was for less than $1,000) provided commissions of $50 each, or $300. If considered as a group listing authorizing sale of the six lots for $1,150, the commission would have been $115. While appellant knew, before delivering the deed, that

the property had brought $1,500, clearly he was confused regarding obligations; and in his confusion appellant relied upon the Agency to supply essential facts.

It must be conceded that Purdom was honestly mistaken when the first settlement was made. Still, in view of subsequent dealings, appellant was entitled to information of an accurate nature, and this ought to have been given him before the second commitment was proposed.

In the circumstances, appellee owed double duties: one to the purchasers, and another to Biniores. Its duty to the buyer was discharged, but this was done before Biniores had been given an opportunity to examine evidences of the obligations he was called upon to pay. Having failed in this respect, appellee, after the agency relationship had ended, made certain payments. In doing this it assumed a voluntary part, and is not entitled to subrogation.

Appellants filed cross-complaints, alleging that Walthour-Flake was bound under the contract to sell the property to the best advantage, and that in disposing of the lots for $1,500 the price was shockingly low, and there was a breach of an implied condition to act reasonably in protecting appellants' interests. We think this position was not well taken and that the Chancellor correctly dismissed the cross-complaint.

That part of the decree wherein judgment was rendered for $490.83 is reversed. The cause is dismissed.